IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| GARY DAVIS, | ) | |
| | ) | 1:22-CV-00219-RAL |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | Chief United States Magistrate Judge |
| WARDEN DERICK OBERLANDER, | ) | |
| SECURITY LIEUTENANT DAVIS, MRS. | ) | |
| CROTHER, UNIT E MANAGER; | ) | Memorandum Opinion on Motions for |
| COPCHECK, AM SERGANT; GHRAM, | ) | Summary Judgment |
| PM SERGANT; CORRECTIONAL | ) | |
| OFFICER MORGAN, CORRECTIONAL | ) | |
| OFFICER REED, IAN GUSTAFSON, SCI | ) | ECF NOS. 51, 78 |
| FOREST P.R.E.A. COORDINATOR; | ) | |
| | ) | |
| Defendants | ) | |

I.    BACKGROUND

Plaintiff Gary Davis, an inmate incarcerated at the State Correctional Institution at Forest
(SCI-Forest), commenced this action against Warden Derick Oberlander, Security Lieutenant
Davis, Unit Manager Crowther, and four correctional officers—Copcheck, Ghram, Morgan, and
Reed. Davis' Amended Complaint—the operative pleading before the Court—alleges that the
Defendants ignored his complaints of sexual harassment from another inmate, transferred him
into a cell with a transgendered inmate in retaliation for his sexual harassment complaints, and
issued him an unwarranted misconduct when he refused to accept the cell transfer. ECF No. 15.
Davis also appears to argue that he was denied an opportunity for parole because of the
misconduct. *Id.* Claiming violations of the First, Fifth, and Eighth Amendments to the United
States Constitution, Davis seeks monetary relief pursuant to 42 U.S.C. § 1983. *Id.*

Defendants have moved for summary judgment on all claims pursuant to Fed. R. Civ. P 56. *See* ECF Nos. 78-81. They argue that Davis never exhausted his administrative remedies and, alternatively, has failed to adduce evidence to withstand summary judgment as to any of his claims. In addition to responding to Defendants' motion, *see* ECF Nos. 87-89, Davis has filed a cross-motion for summary judgment. *See* ECF Nos. 51, 52, 57. Each motion has been thoroughly brief and is ready for decision.[1]

## II.   FACTUAL ALLEGATIONS

From January 10 through July 16, 2020, Davis was housed in general population on E-Block at SCI-Forest. ECF No. 80 ¶ 2. Throughout that time, Davis alleges that his cellmate sexually harassed him by making lude comments and suggestions of a homosexual nature. ECF No. 15 at pp. 3-6. Davis complained to staff at SCI-Forest but nothing was done. *Id.*

On or about July 16, 2020, Davis telephoned his aunt and complained that his cellmate had been sexually harassing him. ECF No. 15 at p. 3. Davis explained that he had been reporting the abuse to staff members for at least four months to no avail. *Id.* at p. 5. His aunt, in turn, telephoned SCI-Forest and reported that Davis was being sexually harassed by his cellmate. ECF No. 80 ¶ 3. Based on her complaint, Defendant Clouser interviewed Davis about the harassment and agreed to move him into another cell. *Id.* ¶¶ 4-5.

At approximately 10:10 a.m. on July 16, 2020, Defendant Morgan ordered Davis to pack his things to be moved to a different cell. *Id.* ¶ 5. Although initially "relieved," Davis' relief and anxiety returned when he saw that his new cellmate was going to be a "transgender with

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

breasts." ECF No. 15 at p. 6. Because of his new cellmate's transgender status, Davis refused to move cells. ECF No. 80 ¶¶ 6-7. As a result, he was placed in the Restricted Housing Unit (RHU) and issued Misconduct No. B976865 for refusing to obey an order. *Id.* ¶¶ 9-10; ECF No. 81-1 at p. 7. Davis later pled guilty to the misconduct and declined to file an appeal. *Id.* ¶¶ 11-12; ECF No. 81-1 at p. 15.

On August 3, 2020, Davis submitted a grievance—Inmate Grievance No. 881250—alleging that Defendants Crowther and Gillman had disregarded his frequent complaints of sexual harassment and that his subsequent transfer to a cell with a transgender inmate was in retaliation for his aunt's complaint to the facility about that harassment. ECF No. 81-1 at p. 17. Davis' grievance was denied on initial review and on appeal to the facility manager. ECF No. 81-1 at pp. 24-25, 29. However, Davis did not take the final step of appealing Grievance No. 881250 to the Secretary's Office of Inmate Grievance Appeals (SOIGA) at the Department of Corrections (DOC). ECF No. 81-1 at p. 31.

In the meantime, Davis came up for parole on several occasions between September 2021 and September 2022 and was denied each time. ECF No. 80 ¶¶ 19-20. Davis seems to imply that the denials were influenced by the misconduct that he received after refusing to switch cells. ECF No. 15 at pp. 8-10.

Based on the foregoing allegations, Davis appears to raise three claims. First, he alleges that "all E-Block staff" violated his First Amendment right to "freedom of speech" by ignoring his complaints about his cellmate's sexual harassment, "covering up" his attempt to file a complaint pursuant to the Prison Rape Elimination Act (PREA), and transferring him to a cell with a transgendered cellmate in "retaliation" for his aunt's phone call to the facility. Next, he avers that prison staff subjected him to cruel and unusual punishment in violation of the Eighth

3

Amendment by sending him to the RHU after he refused to bunk with a transgendered inmate.

Finally, he maintains that unidentified parties violated the Fifth Amendment[2] by denying his

applications for parole.

III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the district court to enter summary

judgment "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Under this standard

"the mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome

under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*,

957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S.

at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283,

1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court

must view the record and all reasonable inferences to be drawn therefrom in favor of the

---

[2] It is axiomatic that "[t]he limitations of the [F]ifth [A]mendment restrict only federal governmental action . . ." *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983).  There is no dispute that none of the Defendants are federal actors.  Consequently, Davis cannot maintain a Fifth Amendment claim against them pursuant to Section 1983. *See, e.g.*, *Leventry v. Watts*, 2007 WL 1469038, at *2 (W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the actions of federal officials, not state actors."); *Kopchinski v. Green*, 2006 WL 2228864, at *1 (E.D. Pa. Aug. 2, 2006) (dismissing plaintiff's Fifth Amendment claims because all of the defendants were state actors).

nonmoving party.  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party may also rely on the lack of evidence to support an essential element of the opposing party's claim as a basis for the entry of summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

Because Plaintiff is proceeding *pro se*, the court will "apply the applicable law, irrespective of whether [he] has mentioned it by name."  *Holley v. Dep't of Veteran's Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999).  On a motion for summary judgment, however, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion …"  *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted).  Put another way, *pro se* status does not relieve a non-moving party of his "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact."  *Id.* (quoting *Boykins v. Lucent Techs.*, Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012).

IV.    ANALYSIS

Defendants first argue that Davis has failed to exhaust his administrative remedies as to any of his claims as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (PLRA). Because this argument is dispositive, the Court need not reach Defendants' alternative argument that Davis has failed to adduce evidence to create a triable issue of material fact as to the merits of his claims.

In broad brush, the PLRA requires a prisoner to exhaust available administrative remedies before he may bring an action challenging the conditions of his confinement. *See* 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, the statute requires "proper exhaustion," meaning that a prisoner's completion of the administrative review process must also satisfy the applicable procedural rules of the prison's grievance system. *Fennell v. Cambria County Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015). A procedurally defective administrative grievance, even if pursued to final review, precludes action in federal court. *Id.* Failure to exhaust administrative remedies under the PLRA is an affirmative defense that the defendants must plead and prove. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

The grievance system utilized in Pennsylvania's prison system requires inmates to satisfy a three-step grievance and appeals process. *See* Grievance System Policy DC ADM-804; *Smith v. Sec. of Pa. Dept. of Corrections*, 2018 WL 279363, at *2 (W.D. Pa. Jan. 3, 2018). First, the inmate must "legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to 'initial review.'" *Smith*, 2018 WL 279363, at *2 (citing *Spruill v. Gillis*, 372 F.3d 218, 233 (3d Cir. 2004)). Second, the initial review must be appealed

to the Facility Administrator for a second level of review. *Id.* Finally, "the inmate is required to file an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA")." *Id.* Once these three steps have been satisfied, a grievance has ordinarily been administratively exhausted for purposes of the PLRA.

A different procedure applies to misconduct appeals. While DC-ADM 804 applies to all inmate grievances not connected with a misconduct citation, "[i]ssues concerning a specific inmate misconduct charge . . . [or] a specific disciplinary sanction . . . must be addressed through Department Policy DC-ADM 801, 'Inmate Discipline.'" *Cooper v. Garman*, 2024 WL 100246, at *12 (M.D. Pa. Jan. 9, 2024); ECF No. 81-1 at p. 20 ¶ 2. Pursuant to DC-ADM 801, an inmate who has been found guilty of a misconduct charge may file an appeal to the Program Review Committee (PRC) within fifteen days of the hearing. *See Hinton v. Mark*, 2017 WL 4342204, at *4 (W.D. Pa. Sept. 29, 2017). Then, within seven days of the PRC's decision, the inmate may file a second level appeal to the Superintendent or Facility Manager. *Id.* Finally, the inmate may make a final appeal to the Office of the Chief Counsel. *Id.* An inmate must properly complete all these steps to exhaust administrative remedies. *Id. See also Jackson v. O'Brien*, 2021 WL 982739, at *6 (W.D. Pa. Mar. 16, 2021).

In support of their PLRA exhaustion affirmative defense, Defendants have submitted the affidavits of Amanda West, a SOIGA Grievance Review Officer, and Zachary Moslak, the DOC's Chief Hearing Examiner. *See* ECF No. 81-1 at pp. 20, 31. West states that, as a Grievance Review Officer, she has access to all inmate records regarding grievances. ECF No. 81-1 at p. 31 ¶ 3. She states that she has reviewed the pertinent DOC records for inmate Davis and, based on that review, attests that he never appealed any grievance to SOIGA for final review during the relevant timeframe. *See id.*, ¶¶ 4-6. Moslak similarly attests that, as the Chief

7

Hearing Examiner for the DOC, he has access to and has reviewed the DOC's records and determined that Davis did not appeal Misconduct B976865 to any level of review. *Id.* at pp. 20-22 ¶¶ 1, 18-19.

Based on these submissions, Defendants have met their threshold burden of demonstrating through record evidence that Davis did not administratively exhaust any of the claims raised in his Amended Complaint. Davis has offered no evidence to support a contrary finding. Therefore, the Court finds that no genuine dispute exists regarding Davis' failure to exhaust his administrative remedies as to Inmate Grievance No. 881250, Misconduct B976865, or any other pertinent administrative filing.

Davis does not dispute this failure. Instead, he claims that he tried to appeal Grievance 881250 to final review but was somehow thwarted by "mailing issues." ECF No. 88 at 17 ("The Petitioner mailed 2 final appeals for the grievance process no answer"); ECF No. 89 ¶ 18 ("Plaintiff mail final appeal twice."). Construing his argument liberally, it appears that Davis may be suggesting that his administrative remedies were rendered "unavailable" by some form of obstruction by unidentified prison officials. *See Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) (noting that the PLRA only requires an inmate to exhaust "available" administrative remedies).

The United States Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016). First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically

8

speaking, incapable of use." *Id*. at 643-44.  Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *Id*. at 644.

To the extent that Davis is challenging the availability of the administrative process, he has provided no factual record to support his claim that the DOC obstructed his access to the mail.  "Once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Kendrick v. CO Hann*, 2021 WL 2914986, at *5 (M.D. Pa. July 12, 2021) (citing *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018)).  Davis' unsupported assertion that "mailing issues" deprived him of the ability to appeal his grievance is insufficient to create a genuine issue of material fact on an issue concerning which he bears the ultimate burden of proof.  *See Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988) ("If the moving party has satisfied its initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact."); *Player v. Motiva Enterprises, LLC*, 240 Fed. Appx. 513, 522 n. 4 (3d Cir. 2007) ("Where the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine issue of material fact 'by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'") (quoting *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004)).

Even if Davis had met this evidentiary burden, his claim would still run afoul of another DC-ADM 804 requirement: that an inmate who "desires compensation or other legal relief normally available from a court" must "request the relief with specificity in his/her initial grievance." *See Wright v. Sauers*, 2017 WL 3731957 (W.D. Pa. Aug. 30, 2017); *Spruill*, 372

F.3d 218. Courts characterize the satisfaction of this requirement as "proper exhaustion." *Smith*, 2018 WL 279363, at *3 (noting that a grievance must be fully exhausted to final review *and* "properly exhausted" with respect to remedy). Pursuant to this requirement, an inmate is precluded from seeking legal relief in a lawsuit, including monetary damages, if the inmate did not request that same relief in his grievances (even if he appealed those grievances to the Secretary's Office for final review). *See, e.g.*, *Wright*, 2017 WL 3731957, at *7 (finding lack of proper exhaustion where plaintiff failed to set forth desired monetary relief on his initial grievance form as required by DC-ADM 804); *Camacho v. Beers*, 2018 WL 6618410, at *3 (W.D. Pa. Dec. 18, 2018) (holding that, because "Plaintiff failed to request the specific relief of monetary compensation in the grievances he filed as to the subjects of this lawsuit . . . he did not exhaust all administrative remedies with regard to such claims . . . [and] may not pursue an action in federal court based on the claims raised in his procedurally defective grievances."); *Sanders v. Beard*, 2013 WL 1703582, at *6-7 (M.D. Pa. Apr 19, 2013) (dismissing claims for monetary damages brought by plaintiffs who did not request monetary damages in their initial grievances as required by DC-ADM 804).

A review of Grievance 881250 reveals that Davis did not request any form of relief from the DOC at any administrative level. *See* ECF No. 81-1 at pp. 17-18. His failure to request a remedy in his grievance precludes him from seeking relief in the instant action based on the allegations therein. *Wright*, 2017 WL 3731957, at *7 (granting summary judgment against plaintiff because of his "failure to set forth [any] desired monetary or other legal relief on his initial grievance form"); *Smith*, 2018 WL 279363, at *4 (granting summary judgment against plaintiff where "Plaintiff did not request any relief in [his] grievance much less any legal relief that could be provided by a court."). Summary judgment is warranted.

V.      CONCLUSION

For the reasons set forth herein, Defendants' motion for summary judgment is granted and Davis' motion for summary judgment is denied.  A separate judgment will follow.

DATED this 27th day of February, 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

11